# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

DAVEDE DAVILLIER                           CIVIL ACTION

VERSUS                                     NO. 12-1704

ROBERT TANNER, WARDEN                      SECTION "E"(2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

# I. FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Davede Davillier, is a convicted inmate currently incarcerated in the Rayburn Correctional Center in Angie, Louisiana.[2] On June 18, 2007, Davillier was charged by bill of information in St. Tammany Parish with possession of cocaine.[3] The Louisiana First Circuit Court of Appeal summarized the facts of the case as follows:

> Testimony adduced at the hearing on the defendant's motion to suppress established that on or about April 4, 2007, at approximately 5:40 p.m., Parole and Probation Officer Lindy Loustau and Corporal Sean Beavers of the St. Tammany Parish Sheriff's Office arrived at the defendant's residence in Slidell, Louisiana, to conduct a residence check and drug screen. Officer Loustau was the defendant's parole officer at the time of the offense. After entering the defendant's residence, Corporal Beavers conducted a pat-down search of the defendant. Pieces of rock-like substances (suspected crack cocaine) fell to the floor as a wad of paper was uncovered from the defendant's right-front pants pocket. Corporal Beavers administered the drug screening.[4] A search of the defendant's residence led to the seizure of a digital scale and a razor blade located on the defendant's bedroom dresser. The digital scale and razor blade had a white residue on them.[5] The defendant was arrested and ultimately convicted of possession of cocaine.[6]

---

[2]Rec. Doc. No. 1.

[3]Felony Bill of Information, St. Rec. Vol. 1 of 4, p. 23.

[4]The results of the screening were not introduced.

[5]According to the St. Tammany Parish Sheriff's Office Crime Laboratory Scientific Analysis Report, the rock-like substance and residue from the digital scale and razor blade contained cocaine.

[6]The trial testimony of Officer Loustau and Corporal Beavers was consistent with their testimony at the motion to suppress hearing. Defendant testified at trial and denied being in possession of drugs, the digital scale or the razor blade. Defendant also denied making inculpatory statements at the time of the residence check.

State v. Davillier, 2009 WL 382716, *1 (La. App. 5th Cir. 2009); State Record Volume 3 of 4, Louisiana First Circuit Court of Appeal Opinion, 2008-KA-0846, February 13, 2009 (footnotes original).

Davillier's appointed counsel filed motions to suppress the confession, the evidence and the identification.[7] After an October 17, 2007 hearing, the state trial court denied Davillier's motions to suppress the confession and the evidence.[8] Trial commenced immediately thereafter, and the jury found Davillier guilty as charged.[9]

The State filed a multiple offender bill of information against Davillier on October 26, 2007.[10] On November 16, 2007, the state trial court sentenced Davillier to five (5) years in prison with credit for time served.[11] At a December 4, 2007 multiple bill hearing, Davillier did not contest that he was the same person with the prior convictions set forth in the multiple bill, but he did contest the constitutionality of his prior convictions.[12] At a second multiple bill hearing on February 14, 2008, the state trial court found that

---

[7]St. Rec. Vol. 1 of 4, pp. 30, 36 and 38.

[8]St. Rec. Vol. 2 of 4, pp. 175-76. Davillier's motion to suppress the identification was dismissed as moot. Id. at p. 151.

[9]Id. at pp. 177 and 266, Trial Transcript; St. Rec. Vol. 1 of 4, p. 58, Verdict Form, 10/17/07.

[10]St. Rec. Vol. 3 of 4.

[11]St. Rec. Vol. 2 of 4, pp. 270-71, Sentencing Hearing Transcript, 11/16/07.

[12]Id. at p. 275, Multiple Bill Hearing Transcript, 12/4/07.

Davillier was a fourth-felony offender. The trial court vacated Davillier's original five-year prison sentence and resentenced him to 20 years at hard labor without benefit of probation or suspension of sentence to run consecutively to the sentences he was "presently serving."[13]

On direct appeal, Davillier's appointed counsel asserted a single assignment of error, arguing that officers could not lawfully search Davillier "unless they had a probable suspicion that Mr. Davillier had been, was, or was about to be engaged in criminal conduct."[14] On February 13, 2009, the Louisiana First Circuit affirmed Davillier's conviction, habitual offender adjudication and sentence, finding no merit to Davillier's argument.[15]

On March 16, 2009, Davillier's counsel timely filed a writ application in the Louisiana Supreme Court claiming that the state appellate court erred in finding that the

---

[13]Id. at pp. 277-93, Multiple Bill Hearing Transcript, 2/14/08.

[14]St. Rec. Vol. 4 of 4, Appeal Brief at p. 5, 2008-KA-0846, 5/27/08.

[15]State v. Davillier, 2009 WL 382716 (La. App. 1st Cir. (2009); St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2008-KA-0846, 2/13/09 (Guidry, J. dissented and assigned reasons).

search of Davillier's person was reasonable.[16]  On November 20, 2009, the Louisiana

Supreme Court denied the writ application without stated reasons.[17]

Davillier's conviction became final 90 days later, on February 18, 2010, when he

did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192

F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States

Supreme Court is considered in the finality determination under 28 U.S.C. §

2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On November 16, 2010, Davillier submitted to the state trial court an application

for post-conviction relief and a motion to correct an illegal sentence.[18]  In his application

for post-conviction relief, Davillier claimed that his trial counsel was ineffective during

pre-trial proceedings and trial. In his motion to correct an illegal sentence, Davillier

argued that his trial counsel was ineffective in his multiple offender proceedings. On

February 4, 2011, the state trial court denied both Davillier's application for post-

---

[16]St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 2009-K-0579, 3/16/09.  In a March 16, 2009 letter, the Clerk of Court for the Louisiana Supreme Court stated that the pleading was filed on March 16, 2009.  St. Rec. Vol. 3 of 4, La. S. Ct. Letter, 2009-K-0579, 3/16/09.  Pursuant to Louisiana Supreme Court Rule X, § 5(a), a litigant has only 30 days to file a writ application to challenge a judgment of a Louisiana intermediate appellate court. However, because in this case the 30th day fell on a Sunday, Davillier's counsel had until the following business day, Monday, March 16, 2009, to file a writ application in the Louisiana Supreme Court.  See La. Code Crim. P. art. 13; La. Rev. Stat. Ann. § 1:55.

[17]State v. Davillier, 25 So.3d 787 (La. 2009); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2009-K-0579, 11/20/09.

[18]St. Rec. Vol. 4 of 4.  Only Davillier's motion to correct an illegal sentence is dated. Because both his writ application and motion to correct an illegal sentence were denied on the same date, I will assume that both pleadings were submitted on the same date.

conviction relief and motion to correct an illegal sentence.[19]  On March 30, 2011, Davillier filed a writ application with the Louisiana First Circuit claiming he received ineffective assistance of counsel in his pre-trial and trial proceedings.[20]  On June 22, 2011, the Louisiana First Circuit denied the writ application without stated reasons.[21]  On July 8, 2011, Davillier filed a timely writ application with the Louisiana Supreme Court claiming that he received ineffective assistance of counsel in his pre-trial and trial proceedings and that the state trial court erred in failing to conduct an evidentiary hearing and in denying his application for post-conviction relief.[22]  On April 27, 2012, the Louisiana Supreme Court denied the writ application without stated reasons.[23]

## II.  FEDERAL HABEAS PETITION

On July 2, 2012, the clerk of this court filed Davillier's petition for federal habeas corpus relief in which he asserts the following grounds for relief:  (1) His conviction was based upon the admission of evidence obtained pursuant to an unlawful search and

---

[19]St. Rec. Vol. 4 of 4.

[20]Id., Application for Supervisory Writ, 2011-KW-0628 (dated 3/30/11).

[21]Id.  State v. Davillier, 2011-KW-0628 (La. App. 1st Cir. 2011).

[22]St. Rec. Vol. 4 of 4, Application for Supervisory Writ, 2011-KH-1576 (dated 7/8/11).

[23]State ex rel. Davillier v. State, 86 So.3d 614 (La. 2012); St. Rec. Vol. 3 of 4, 2011-KH-1576.

seizure and unlawful arrest.[24] (2) He was denied effective assistance of counsel because his counsel failed properly to communicate with him, question and subpoena witnesses and perform on a professional level. He also alleges that his counsel improperly advised him to "plead to 10 years flat," even though the charge against him carried a sentence of only five (5) years, and that his counsel did not challenge convictions that were improperly used to support his multiple offender adjudication.[25]

The State filed a response in opposition to Davillier's petition, conceding that the petition was timely filed, but arguing that Davillier failed to exhaust available state court remedies as to some of his arguments supporting his ineffective assistance of counsel claim and, alternatively, that his claims are without merit.[26]

III. GENERAL STANDARDS OF REVIEW

The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[27] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir.

---

[24]Rec. Doc. No. 1, pp. 3-4. Claim (1) is a compilation of the claims Davillier has numbered 1 and 2.

[25]Rec. Doc. No. 1, pp. 4-5.

[26]Rec. Doc. No. 9.

[27]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Davillier's petition, which, for reasons discussed below, is deemed filed in this federal court on June 27, 2012.[28]

The threshold questions in habeas review under the amended statute are whether the petition was timely filed within the AEDPA's one-year statute of limitations and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c).

The State concedes[29] and I find that Davillier's petition is timely filed. The State contends, however, that Davillier has failed to exhaust his state court remedies because the grounds raised in support of his ineffective assistance of counsel claim "differ" from

---

[28]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Davillier's petition was filed by the clerk of this court on July 2, 2011, when pauper status was granted. Davillier dated the signature on his petition on June 27, 2012.  This is the earliest date on which he could have delivered the petition to prison officials for mailing. The fact that the petition was not actually filed until later does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even though fee requirement has not been satisfied at the time of mailing) (citing Spotville, 149 F.3d at 374).

[29]Rec. Doc. No. 9, p. 3.

8

the grounds asserted in the state courts.[30]  While the State is correct in this regard, I will

nevertheless address Davillier's ineffective assistance claim because, despite the failure

to exhaust, the claim must clearly be denied on the merits.  See 28 U.S.C. § 2254(b)(2).

IV.  STANDARDS OF MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions

of fact, questions of law and mixed questions of fact and law in federal habeas corpus

proceedings.  Nobles, 127 F.3d at 419–20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct ... and

we will give deference to the state court's decision unless it 'was based on an

unreasonable determination of the facts in light of the evidence presented in the State

court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir.2000) (quoting 28

U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039, 121 S.Ct. 2001, 149 L.Ed.2d 1004

(2001).  The amended statute also codifies the "presumption of correctness" that attaches

to state court findings of fact and the "clear and convincing evidence" burden placed on

a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).  A state

court's determination of questions of law and mixed questions of law and fact are

reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's

decision "'was contrary to, or involved an unreasonable application of, clearly

---

[30]Rec. Doc. No. 9, p. 4.

established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir.2000) (quoting Miller v. Johnson, 200 F.3d 274, 280–81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405–06 (2000); Penry, 532 U.S. at 792–93; Hill, 210 F.3d at 485. "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24–25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir.2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24–25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir.2006).

V.     UNLAWFUL SEARCH AND SEIZURE (CLAIM NO. 1)

Davillier challenges the legality and constitutionality of the search, seizure and arrest which led to his conviction.  Davillier argues that the arresting officer was required to have "a reasonable suspicion that a crime has been, is, or is about to occur to search the person of the petitioner."[31]

The availability of federal habeas corpus relief for an alleged Fourth Amendment violation was substantially restricted in the United States Supreme Court's decision in Stone v. Powell, 428 U.S. 465 (1976).  In Stone, the Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner cannot be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494.  A "full and fair hearing means that 'where there are facts in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court.'" Davis v. Blackburn, 803 F.2d 807, 808 (5th Cir. 1986) (per curium) (quoting O'Berry v. Wainwright, 546 F.2d 1204, 1213 (5th Cir. 1977) (emphasis in original)).  The bar of Stone v. Powell also

_____

[31]Rec. Doc. No. 1, p. 10 (citation omitted).

applies despite any state trial court error in deciding the merits of petitioner's Fourth Amendment claim. Andrews v. Collins, 21 F.3d 612, 631-32 (5th Cir. 1994); Christian, 731 F.2d at 1199 n.1; Swicegood v. Alabama, 577 F.2d 1322, 1324-25 (5th Cir. 1978).

Absent proof that petitioner was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded. Stone, 428 U.S. at 494-95 n.37; Bell v. Lynaugh, 828 F.2d 1085, 1091-92 (5th Cir. 1987). "[I]n the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits," petitioner's claim cannot succeed. Williams v. Brown, 609 F.2d 216, 220 (5th Cir. 1980); Christian v. McKaskle, 731 F.2d 1196, 1199 (5th Cir. 1984). In this case, Davillier neither alleges nor demonstrates that Louisiana state courts routinely or systematically preclude litigation of a defendant's Fourth Amendment claims. Moreover, "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims." Bailey v. Cain, No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) ( Duval, J.) (order adopting Report and Recommendation).

In addition, the record amply demonstrates that Davillier received appropriate review in the state courts. The record establishes that on October 17, 2007, the state trial court held an evidentiary hearing on Davillier's motions to suppress, at which Davillier

was represented by counsel and challenged the action of the arresting officer and the parole officer. Both defense counsel and the prosecutor offered oral argument and, after hearing testimony and argument, the trial court denied Davillier's motions to suppress.[32]

The Louisiana First Circuit reviewed the trial court's denial of the motions to suppress on direct appeal. The court thoroughly reviewed the facts and testimony related to the search as presented at the suppression hearing and at trial.[33] The court found that the "justification for conducting the pat-down search of the defendant's person, a limited intrusion, was based on reasonable concerns."[34] The Louisiana Supreme Court is presumed to have relied upon the same grounds as the Louisiana First Circuit's reasoned opinion in denying Davillier's related writ application. See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Based on the state court record, I find that "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence

---

[32]St. Rec. Vol. 2 of 4, Transcript of Motion to Suppress Hearing, pp. 151-76.

[33]State v. Davillier, 2009 WL 382716 at *2-3.

[34]Id. at *3.

sufficient to call into question the reliability of the state court's determination of [his] federal claims." Andrews, 21 F.3d at 631. The State provided Davillier, who was assisted by counsel, with the opportunity to litigate his Fourth Amendment claim fully and fairly. The fact that he disagrees with the state courts' decision to deny relief is not sufficient to overcome the Stone prohibition of federal review of his Fourth Amendment claim. Janecka v. Cockrell, 301 F.3d 316, 320-21 (5th Cir. 2002); Williams v. Collins, 16 F.3d 626, 637-38 (5th Cir. 1994). Accordingly, Stone bars review of this claim, and this claim for federal habeas relief must be dismissed.

VI.     INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 2)

Without providing supporting arguments, Davillier perfunctorily claims that his counsel provided ineffective assistance because he failed to communicate with Davillier, speaking with him only twice before trial; failed to contact witnesses, who were at Davillier's home at the time of his arrest; failed to subpoena the officers who assisted in the search of his residence; failed "to perform on a professional level;" failed properly to question the parole officer about why she brought a "narcotics officer" to oversee Davillier's urine test when she had overseen such testing in the past; and failed properly to question the officer about his pat-down search, specifically, about "going in

petitioner's waistband to reach [his] pocket."[35]  Davillier also claims, with no supporting

evidence, that counsel advised him to enter a guilty plea which would have required him

to serve a 10-year prison sentence, when the crime with which he was charged carried

only a five-year sentence.  Finally, Davillier claims that counsel failed to challenge some

of the prior convictions which were used to enhance his sentence.

The issue of ineffective assistance of counsel is a mixed question of law and fact.

Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir.2010); Richards v. Quarterman, 566 F.3d

553, 561 (5th Cir.2009).  Thus, the question before this court is whether the state courts'

denial of relief was contrary to or an unreasonable application of United States Supreme

Court precedent.

The standard for judging performance of counsel was established by the United

States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), in which the

Supreme Court established a two-part test for evaluating claims of ineffective assistance

of counsel, requiring petitioner to prove both deficient performance and resulting

prejudice. Strickland, 466 U.S. at 697.  The Supreme Court first held that "the defendant

must show that counsel's representation fell below an objective standard of

reasonableness." Id. at 687–88.  Second, "[t]he defendant must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the

---

[35]Record Doc. No. 1 (Petition at pp. 4-5).

proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir.1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough under Strickland, however, 'that the errors had some conceivable effect on the outcome of the proceeding.'" Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir.1994) (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591 (5th Cir.1999) (citing Strickland, 466 U.S. at 689–90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal

v. Puckett, 286 F.3d at 236–37; Clark v. Johnson, 227 F.3d 273, 282–83 (5th Cir.2000), cert. denied, 531 U.S. 1167, 121 S.Ct. 1129, 148 L.Ed.2d 995 (2001).

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington v. Richter, _ U.S. _, 131 S.Ct. 770, 788 (2011). The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir.1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir.1997) and Mann v. Scott, 41 F.3d 968, 983–84 (5th Cir.1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466

U.S. at 689; <u>Moore v. Johnson</u>, 194 F.3d at 591. The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. <u>Id</u>.

As to his claims that his counsel was ineffective because he seldom spoke with Davillier and failed to perform on a "professional level," contact witnesses who were in his house at the time of his arrest and subpoena officers who assisted in the search of his house, Davillier provides no evidence, or even any argument, as to how he was prejudiced by these alleged deficiencies. He provides nothing to show how more communication would have aided his defense and what counsel should have done to perform at a "professional level." Further, he provides no proof or indication as to what these unidentified witnesses and officers would have testified about or that their testimony would have been favorable to his defense.[36]

" 'Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" <u>Graves v. Cockrell</u>, 351 F.3d 143, 156 (5th Cir.2003) (quoting <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5th Cir.1978)). "'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of <u>Strickland</u> if [counsel] could have concluded, for tactical reasons, that

---

[36]With regard to the persons in Davillier's house at the time of his arrest, Parole Officer Loustau testified that there were occupants in the house when they arrived, but they all voluntarily left before the search of Davillier's person and home. St. Rec. Vol. 2 of 4, p. 201.

attempting to present such evidence would be unwise.'" <u>Williams v. Cockrell</u>, 31 Fed. Appx. 832 (5th Cir.2002) (quoting <u>Williams v. Cain</u>, 125 F.3d 269, 278 (5th Cir.1997)). In this case, Davillier has presented nothing, other than his vague and self-serving argument, to establish that counsel did not contact these witnesses and officers or investigate them as potential, favorable trial witnesses. Davillier has failed to satisfy either prong of the <u>Strickland</u> test.

Davillier also alleges that his counsel was deficient in failing properly to question Parole Officer Lindy Loustau about her bringing a "narcotics officer" to perform a urine test when she had performed such tests in the past. Davillier does not specify what questions counsel should have asked or how he was prejudiced by counsel's failure in this regard. The transcript of the suppression hearing reflects that Parole Officer Loustau had performed urine tests in the past, but not on male parolees. Officer Loustau testified that it was the policy of the probation and parole department to have male officers perform urine tests on males parolees and female officers perform urine tests on female parolees. She explained that such a policy was necessary because the officers "actually observe the urination."[37] Further, there is no evidence that the officer who accompanied her, Officer Sean Beavers, was a "narcotics officer." Loustau testified that because she was going to Davillier's house after business hours, no male probation officers were

_____

[37]St. Rec. Vol. 2 of 4, p. 155.

19

available to accompany her. Therefore, she contacted the St. Tammany Parish Sheriff's Office because it has "someone working any time day and night" and they assist parole officers.[38] Loustau did not request a "narcotics officer" and Officer Beavers was not specifically assigned to a narcotics unit but had had "occasion to handle narcotics related violations" during his time as a general assignment sheriff's deputy.[39]

Davillier also complains that his counsel failed properly to question Deputy Beavers about his pat-down search of Davillier, who argues that defense counsel should have questioned Beavers about how he "overstepped bounds . . . by going in petitioner's waistband to reach his pocket . . . ."[40]

The trial transcript reflects that on both direct and cross-examination, Beavers was questioned about his pat-down search of Davillier. Beavers explained that it is routine procedure to pat-down a parolee before performing a drug test. He stated that the purpose of the pat-down is not only to discover objects, including razor blades and syringes, which might endanger an officer's life or safety, but also substances that could be used to alter the drug test.[41] As to his search of Davillier's waistband, the officer explained that such a search was necessary because Davillier had pulled his pockets

[38]Id. at p. 156.

[39]Id. at p. 162-63.

[40]Rec. Doc. No. 1, p. 4.

[41]St. Rec. Vol. 2 of 3, pp. 206-07.

inside out. Beavers said that upon patting him down, he could feel something on Davillier's right-hand side, and because his pockets were pulled inside out Beavers had to reach inside Davillier's pants to retrieve it.[42]

In Samson v. California, 547 U.S. 843, 850 (2006), the Supreme Court stated that parolees on the "'continuum' of state-imposed punishments" fall between incarcerated prisoners and probationers.

> [P]arolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment . . . . [P]arole is an established variation on imprisonment of convicted criminals . . . . The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence. In most cases, the State is willing to extend parole only because it is able to condition it upon compliance with certain requirements . . . . United States v. Cardona, 903 F.2d 60, 63 (1st Cir. 1990) ("[O]n the Court's continuum of possible punishments, parole is the stronger medicine; ergo, parolees enjoy even less of the average citizen's absolute liberty than do probationers" (citations and quotation marks omitted)).

Id. (quotations and citations omitted). Thus, because a parolee has severely diminished privacy expectation, the Supreme Court concluded "that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." Id. at 857 (emphasis added).

---

[42]Id. at pp. 208, 215-16.

I find that Deputy Beavers's pat-down search of Davillier, specifically his reaching into Davillier's waistband, was not a violation of Davillier's Fourth Amendment rights and, therefore, counsel was not deficient in his examination of Beavers about the search. Davillier made such a search necessary by pulling his pockets inside out. The fact that Deputy Beavers felt something relatively small and discovered it to be a wadded piece of paper does not warrant a finding that he "overstepped bounds," as Davillier argues. A dangerous object, such as a razor, or tablets that might alter the results of a urine test could have been hidden in a wadded piece of paper. Both Officer Loustau and Deputy Beavers testified that such a search is routinely performed before a urine analysis is taken from a parolee to ensure both the officer's safety and that the test is clean and valid.[43]

Davillier also claims that his counsel was ineffective because he advised him to accept a plea deal carrying a sentence of "10 years flat" when the possession of cocaine charge against him carried only a five-year prison sentence. He also argues that his counsel failed to challenge prior convictions that were improperly used to enhance his sentence. The transcript of Davillier's habitual offender hearing reflects that defense counsel called Davillier as a witness for the purpose of challenging his prior convictions. The State charged Davillier with having seven (7) prior convictions, including two burglary convictions, a kidnaping conviction, an attempted first degree robbery

---

[43]St. Rec. Vol. 2, p. 193 and p. 206.

conviction, an oral sexual battery conviction, one molestation of a juvenile conviction and a prior possession of cocaine conviction.[44]  Davillier testified that he did not have prior convictions for kidnaping and possession of cocaine, but admitted to having prior convictions for molestation and oral sexual battery of a 12-year-old, first degree robbery and two burglaries.[45]  At the sentencing, the court threw out two of Davillier's prior convictions, but reasoned that even if those convictions were not considered, Davillier was still a fourth felony offender."[46]  Davillier offers no argument as to what more counsel could have done to cancel out any other prior convictions.  Davillier admitted to having five prior convictions in addition to the possession of cocaine conviction which is the subject matter of this habeas petition.

As for Davillier's claim that his counsel was ineffective in advising him to accept a 10-year plea deal when he faced only a five-year sentence if convicted, Davillier offers no evidence to support this claim.  See United States v. Johnson, 679 F.2d 54, 58-59 (5th Cir. 1982) (in reviewing an ineffective assistance of counsel allegation, the court does not "blindly accept speculative claims"); Cooper v. Thaler, 2011 WL 539114, *5 (N.D. Tex. 2011) (conclusory allegations unsupported by any specific facts do not merit federal

---

[44]Id. at p. 289.

[45]Id.

[46]Id. at p. 292.

habeas relief). Even assuming that such evidence might be produced, it is clear that Davillier was not prejudiced by his counsel's alleged deficiency since Davillier, in light of his numerous prior convictions, was subject to an enhanced sentence under the applicable habitual offender statute that was significantly harsher than the alleged 10-year prison term his counsel allegedly advised him to accept as part of a plea agreement.[47] Accordingly, I find that the state courts did not violate Supreme Court precedent in denying Davillier's ineffectiveness claims.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the petition of Davede Davillier for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served

---

[47]<u>Id</u>. at pp. 292-93.

with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[48]

New Orleans, Louisiana, this _____31st_____ day of January, 2013.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[48]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.